**McCarter & English, LLP**
Lanny S. Kurzweil, Esq.
Ryan Richman, Esq.
Four Gateway Center
100 Mulberry St.
Newark, NJ 07102
Telephone: (973) 639-2044
Facsimile: (973) 297-3810
lkurzweil@mccarter.com
rrichman@mccarter.com
*Attorneys for Defendants, E. I. du Pont de Nemours*
*and Company, The Chemours Company, and*
*The Chemours Company FC, LLC*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ERIN ALBRITTON** ) | |
| ) | |
| **Plaintiffs,** ) | **Civil Action No. _____** |
| ) | |
| **v.** ) | |
| ) | |
| **A CLEMENTE, INC.; ANTHONY** ) | |
| **CLEMENTE, INC.; SOLVAY** ) | **NOTICE OF REMOVAL ON BEHALF** |
| **SPECIALTY POLYMERS, USA, LLC;** ) | **OF E. I. du PONT de NEMOURS AND** |
| **SOLVAY SOLEXIS, INC.; ARKEMA,** ) | **COMPANY** |
| **INC.; E. I. DU PONT DE NEMOURS &** ) | |
| **COMPANY; THE CHEMOURS** ) | |
| **COMPANY; THE CHEMOURS** ) | |
| **COMPANY FC, LLC; THE 3M** ) | |
| **COMPANY; AND JOHN DOE** ) | |
| **ENTITIES #1-20** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |
| ) | |
| ) | |
| ) | |

TO:    **THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**

Defendant E. I. du Pont de Nemours and Company ("DuPont") hereby removes the above-captioned case pursuant to 28 U.S.C. § 1441 and § 1442 from the Superior Court of New Jersey, Law Division, Salem County, to the United States District Court for the District of New Jersey. The grounds for removal are as follows:

## I.    BACKGROUND

### A.    Allegations of Plaintiff's Amended Complaint

1.    This suit involves claims against DuPont for acts taken under the express authority and control of agencies and officers of the United States. It is thus removable under 28 U.S.C. § 1442(a)(1).

2.    On September 30, 2021, Plaintiff Erin Albritton filed a Complaint in the Superior Court of New Jersey, Law Division, Salem County, in a case captioned as *Albritton v. Clemente, Inc., et. al.*, Case No. SLM-L-000187-21. This initial Complaint listed as defendants only A. Clemente, Inc., Anthony Clemente, Inc. (collectively, "Clemente") and John Does 1 to 10. A true and correct copy of the Complaint is attached hereto as Exhibit B.

3.    On December 13, 2021, Plaintiff filed an Amended Complaint. Plaintiff made multiple substantive changes, including adding DuPont and six other new Defendants (Solvay Specialty Polymers, USA, LLC; Solvay Solexis, Inc.; Arkema, Inc.; The Chemours Company; The Chemours Company FC, LLC; and The 3M Company). A true and correct copy of the Amended Complaint is attached hereto as Exhibit A.

4.    The Amended Complaint was served on DuPont on December 27, 2021.

ME1 39352437v.1

5.      The Amended Complaint alleges that from 1891 to 2015, DuPont owned and operated Chambers Works, a plant located at 67 Canal Road and Route 130, in Pennsville and Carneys Point Townships, Salem County ("Chambers Works" or the "Site").  Exhibit A at ¶ 68.

6.      The Amended Complaint alleges that during this time DuPont produced, used, and discharged into the environment approximately 1,200 separate chemicals, pollutants, and other hazardous substances at Chambers Works.  *Id.* at ¶ 69.

7.      Plaintiff alleges in the Amended Complaint that multiple broad categories or types of chemicals or products, either alone or in combination, caused or contributed to her personal injuries, including (among others): (1) poly- and perfluoroalkyl substances ("PFAS"); (2) halogenated hydrocarbons; and (3) "numerous mixtures and wastes consisting of multiple compounds, substances, and/or products (*e.g.*, . . . fuel, explosives, [and] ammunition …)".  *Id.* at ¶ 4.[1]  Throughout the Amended Complaint, Plaintiff reiterates the breadth of the chemicals included in her allegations by referencing PFAS and "other toxins."  *See, e.g., id.* at ¶¶ 75, 97, 114, 143.

---

[1] DuPont does not consider Plaintiff's Amended Complaint adequately pled under either New Jersey or federal pleading standards.  DuPont's references to and discussion of Plaintiff's allegations for purpose of this Notice are solely for purposes of demonstrating the propriety of removal and the existence of federal subject-matter jurisdiction, without waiver of any defenses, including as to the sufficiency of the Amended Complaint or allegations within it.

ME1 39352437v.1

**B.    DuPont Manufactured Chemical Compounds At Its Chambers Works Site Under Federal Direction**

8.    Throughout the World War II period, DuPont entered into numerous contracts with the United States for the manufacturing of chemical compounds to be produced at Chambers Works and to be used by the United States and its Allies to support the war effort.

9.    These government contracts, as described below, compelled DuPont in some circumstances to build additional manufacturing plants at Chambers Works, and to vastly increase the volume of chemical compounds manufactured at Chambers Works.  The manufacture of these chemical compounds necessarily resulted in air and water discharges inherently associated with DuPont's manufacturing processes.

**Contract No. W-670-ORD-2210 to Produce Dinitrotoluene**

10.    On April 23, 1942, DuPont entered into contract No. W-670-ORD-2210 with the United States that required the production of 1,550,000 pounds of dinitrotoluene at Chambers Works.  Dinitrotoluene is a precursor to trinitrotoluene (TNT), an explosive.  Plaintiff alleges that explosives chemicals released into the environment from Chambers Works caused or contributed to her injuries.  Exhibit A at ¶ 4.

11.    Contract W-670-CRD-2210 mandated that DuPont produce dinitrotoluene in strict accordance with United States Army specifications.

**Contract No. W-7412-Eng-2 to Produce Perfluoroheptane**

12.    On November 17, 1942, DuPont entered into contract No. W-7412-Eng-2 with the United States to erect a plant to be located at the Chambers Works Site.  The new plant was

4

intended to produce 20,000 pounds of perfluoroheptane at the earliest possible date. Perfluoroheptane is a halogenated hydrocarbon. Plaintiff alleges that halogenated hydrocarbons released into the environment from Chambers Works caused or contributed to her injuries. Exhibit A at ¶ 4.

13.    DuPont accepted the terms of the government's contract No. W-7412-Eng-2 with several conditions, including that the parties would agree on the correct specifications for the production of perfluoroheptane.    The contract also provided that because DuPont had no experience manufacturing perfluoroheptane, nor any history of building a plant for the production of this chemical prior to doing so at the government's behest, any failure to perform the government's work successfully would not subject DuPont to liability nor prejudice its right to be paid.

**Contract No. W-7412-Eng-6 to Produce Perfluoroxylene and Fluorolube**

14.    On June 1, 1944, the United States Army Corps of Engineers ("Corps of Engineers") authorized DuPont, by Letter Contract W-7412-Eng-6, to construct and operate a large-scale plant at Chambers Works for the manufacture of perfluoroxylene and fluorolube. Perfluoroxylene and fluorolube are halogenated hydrocarbons. Plaintiff alleges that halogenated hydrocarbons released into the environment from Chambers Works caused or contributed to her injuries. Exhibit A at ¶ 4. DuPont was requested to furnish labor, material, tools, machinery, equipment, facilities, and supplies not furnished by the United States to complete this project. DuPont was instructed by the government to do everything necessary for the construction of a plant to produce 3550 pounds of perfluoroxylene per day and 215 pounds of fluorolube per day. The plant would be owned by the government and located on DuPont's land at Chambers Works, which would be leased or licensed

to the government for the period of the contract.  The plant was to be in operation no later than September 1, 1943.

**Contract No. W-7412-Eng-3 to Produce Uranium Products**

15.     On November 20, 1942, the Corps of Engineers, by Letter Contract W-7412-Eng-3, placed an order with DuPont to furnish, in the shortest possible time, all labor, material and equipment to construct plants at Chambers Works for the: (1) manufacture of uranium dioxide; (2) conversion of uranium dioxide to uranium tetrafluoride; and (3) conversion of uranium tetrafluoride to metallic uranium.  These compounds fall under the Plaintiff's description of numerous mixtures and wastes consisting of multiple compounds, substances, and/or products such as fuel, explosives, and ammunition, which she alleges caused her injuries.  Exhibit A at ¶ 4.

16.     Full-scale operation of the above plants at Chambers Works was ordered by the government to be complete by May 25, 1943.

17.     Because DuPont had no experience in the design, construction or operation of plants of this nature, except for the production of uranium tetrafluoride, the terms of Letter Contract W-7412-Eng-3 protected DuPont's right to be paid by the government and shielded DuPont from liability in the event that a goal outlined in the Letter Contract was not fulfilled.

**Contract No. W-7412-Eng-22 to Produce Tetramag Slag and Dross**

18.     DuPont and the United States government thereafter entered into Letter contract No. W-7412-Eng-22.  This contract called for the erection of a Recovery Plant at Chambers Works to convert tetracal slag and dross and tetramag slag and dross, which would be supplied to DuPont by the government, into a satisfactory feed material to manufacture uranium dioxide as authorized

6

by Letter Contract W-7412-Eng-3.  The compounds involved in this manufacturing process fall under the Plaintiff's description of numerous mixtures and wastes consisting of multiple compounds, substances, and/or products such as fuel, explosives, and ammunition, which she alleges caused her injuries.  Exhibit A at ¶ 4.

19.     The Recovery Plant was to have an estimated capacity to produce feed material in sufficient quantity so that DuPont could operate the uranium dioxide plant at a capacity to produce 47 tons of uranium dioxide per month.

20.     For the purposes of housing production equipment to be used to manufacture uranium dioxide, DuPont buildings at Chambers Works were to be rented by the government; and temporary buildings constructed at Chambers Works were to be owned and paid for by the government.

21.     Letter Contract W-7412-Eng-22 mandated that the Recovery Plant be ready for full scale operation not later than September 1, 1943.

22.     The formal contract, as executed on May 10, 1944, provided for the conversion of two types of slag and dross to peruranic acid as a feed material for the manufacture of uranium dioxide.  The plant at Chambers Works was designed to have a processing capacity of 130 tons of slag and 14.5 tons of dross per month to produce 44.5 tons of peruranic acid.  Peruranic acid falls under the Plaintiff's description of numerous mixtures and wastes consisting of multiple compounds, substances, and/or products such as fuel, explosives, and ammunition, which she alleges caused her injuries.  *Id.* at ¶ 4.

**Contract No. W-7412-Eng-8 to Produce Redistilled Anhydrous Hydrofluoric Acid**

23.    Additionally, by Letter Contract W-7412-Eng-8, issued on December 31, 1942, the Corps of Engineers requested that equipment be installed in buildings situated within Chambers Works for the purpose of producing 300,000 pounds of redistilled anhydrous hydrofluoric acid. Redistilled anhydrous hydrofluoric acid falls under the Plaintiff's description of numerous mixtures and wastes consisting of multiple compounds, substances, and/or products such as fuel, explosives, and ammunition, which she alleges caused her injuries.  Exhibit A at ¶ 4.

24.    As further explained below, this case is properly removed to this Court pursuant to 28 U.S.C. § 1442(a)(1) because Plaintiff brings claims for or relating to actions that occurred while DuPont was acting under a federal officer or agency.

## II.    REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT MATTER JURISDICTION PURSUANT TO 28 U.S.C. § 1442(A).

25.    This Court has subject matter jurisdiction under 28 U.S.C. § 1442(a) because this is a suit against a "person acting under [an] officer[] of the United States or of any agency thereof . . . for or relating to an[] act under color of such office."

26.    Removal rights under the federal officer removal statute are much broader than under the general removal statute, 28 U.S.C. § 1441.  Suits against defendants acting on behalf of federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999).  This is because § 1442(a)(1) protects "the government's need to provide a federal forum for its officers and those who are 'acting under' a federal office." *Albrecht v. A.O. Smith Water Prods.*, No. 11 Civ. 5990(BSJ), 2011 WL 5109532, at *3 (S.D.N.Y. Oct. 21, 2011) (citation omitted).  This important federal policy "should not be frustrated by a narrow, grudging interpretation of [§] 1442(a)(1)." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969); *see Durham*

*v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006).  To the contrary, § 1442 as a whole must be "liberally construe[d]" in favor of removal.  *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 812 (3d Cir. 2016) (alterations in original) (internal quotation marks omitted).  *Accord id.* at 811 ("Unlike the general removal statute, the federal officer removal statute [Section 1442(a)] is to be 'broadly construed' in favor of a federal forum."); *see also Cessna v. Rea Energy Cooperative, Inc.*, 753 Fed. Appx. 124, 1127 (3d Cir. 2018) (citing *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 147 (2007)).

27.    The case is removable pursuant to § 1442(a) because "(1) [DuPont] is a 'person' within the meaning of the statute; (2) the plaintiff['s] claims are based upon [DuPont's] conduct 'acting under' the United States, its agencies, or its officers; (3) the plaintiff['s] claims against [DuPont] are 'for, or relating to' an act under color of federal office; and (4) [DuPont] raises a colorable federal defense to the plaintiff's claims."  *Papp*, 842 F.3d at 812 (brackets omitted).

28.    Significantly, this Court has recently denied motions to remand two suits against DuPont that included similar claims relating to alleged use or release of chemicals manufactured by DuPont at Chambers Works and elsewhere pursuant to government contracts on the basis that all four prongs for proper removal under § 1442(a) were satisfied.  *New Jersey Dep't of Envtl. Prot. v. E. I. du Pont de Nemours & Co.*, 2020 WL 2041382, at *5 (D.N.J. Apr. 28, 2020); *New Jersey Dep't of Envtl. Prot. v. E. I. du Pont de Nemours & Co.*, 2020 WL 2611539, at *7 (D.N.J. May 22, 2020).

9

### A.    DuPont is a "Person" Under 28 U.S.C. § 1442(a)

29.    DuPont is a corporate entity, and corporations are "person[s]" pursuant to § 1442(a)(1). *Papp*, 842 F.3d at 812 (for purposes of Section 1442(a), "a corporation[] is in legal fact a person" (citing 1 U.S.C. § 1)).

### B.    Plaintiff's Claims Are Based on DuPont's Conduct While "Acting Under" the United States

30.    The second requirement ("acting under" a federal officer) is satisfied when an entity assists or helps carry out, the duties or tasks of a federal officer. *Papp*, 842 F.3d at 812. "The words 'acting under' are to be interpreted broadly . . . ." *Isaacson v. Dow Chemical Co.*, 517 F.3d 129, 136 (2d Cir. 2008) (citation omitted). The "acting under" requirement, like the federal removal statute overall, is to be "liberally construe[d]" to cover actions that involve "an effort to assist, or to help carry out, the federal supervisor's duties or tasks." *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1181 (7th Cir. 2012) (quoting *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142 (2007)); *see also In re Commonwealth's Motion to Appoint Couns. Against or Directed to Def. Ass'n of Philadelphia*, 790 F.3d 457, 468 (3d Cir. 2015), *as amended* (June 16, 2015).

31.    The classic case of government assistance as it relates to government contractors is when "the private contractor acted under a federal officer or agency because the contractors 'help[ed] the Government to produce an item that it need[ed].'" *Defender Ass'n*, 790 F.3d at 468 (quoting *Watson*, 551 U.S. at 153). When "the federal government uses a private corporation to achieve an end it would have otherwise used its own agents to complete," that contractor is "acting under" the authority of a federal officer. *Ruppel*, 701 F.3d at 1181; *see also Defender Ass'n*, 790 F.3d at 468–70.

32.    Here, DuPont was acting under the United States government when it performed pursuant to government contracts including but not limited to, W-7412-Eng-2, W-7412-Eng-6, W-7412-Eng-3, W-7412-Eng-22, W-7412-Eng-8, and 670-ORD-2210 ("Chambers Works Contracts") to produce chemicals including but not limited to perfluoroheptane, perfluoroxylene, fluorolube, uranium dioxide, anhydrous hydrofluoric acid, and dinitrotoluene ("Chemical Compounds") to make ammunition and other products required by the government for the war effort.

33.    DuPont was acting under the supervision of the United States government at Chambers Works as the Chambers Works Contracts contain provisions which dictate the government specifications that DuPont was required to follow in manufacturing each chemical compound.

34.    Moreover, DuPont's contractual relationship with the government fits the classic government assistance scenario as the Chambers Works Contracts required DuPont to work for the government by producing Chemical Compounds that the government needed to advance the war effort.

35.    In fact, DuPont contracted with the government to manufacture products that DuPont had never historically produced, including, but not limited to perfluorheptane, uranium dioxide, and metallic uranium.  Thus, DuPont's sole purpose in manufacturing these chemicals was due to government demand.

36.    Thus, DuPont was acting under government supervision and direction at Chambers Works in manufacturing the Chemical Compounds as DuPont's production was done pursuant to government specifications, and DuPont was producing the Chemical Compounds to assist the government with products that the United States government needed during a time of war.

ME1 39352437v.1

### C.    Plaintiff's Claims against DuPont Are "For, or Relating To" Acts under Color of Federal Office

37.    The next requirement, often referred to as the "nexus" requirement, demands that the alleged conduct have been undertaken "for or relating to" a federal office.[2]  To meet this requirement, "it is sufficient for there to be a connection or association between the act in question and the federal office." *Defender Ass'n*, 790 F.3d at 471.  With respect to alleged discharge or release of substances used or related to DuPont's performance of the government manufacturing contracts set forth above, as this Court recognized in denying motions to remand other cases removed by DuPont on the same basis, it is sufficient for the removing party to allege, as DuPont does here, "that the manufacturing process of certain materials [at issue] . . . was at behest of the government and is related to the discharges that from [sic] the basis of Plaintiffs' complaint." *New Jersey Dep't of Envtl. Prot.*, 2020 WL 2611539, at *4-5.

38.    In the matter at bar, Plaintiff alleges that from 1891 to 2015, DuPont owned and operated Chambers Works and produced, used, and discharged into the environment approximately 1,200 separate chemicals, pollutants, and other hazardous substances.  Exhibit A at ¶¶ 68, 69.  Plaintiff claims that her injuries were caused by an exhaustive list of chemicals and substances—a list which encompass all 1,200 of these substances.  *Id.* at ¶ 4.  Plaintiff repeatedly alleges that her injuries were caused by DuPont's conduct "at all relevant times", "for decades", and "at all material times hereto."  *See, e.g.*, *id.* at ¶¶ 96, 122, 127.

---

[2] The "acting under" and "under color of" prongs overlap.  Both "are satisfied if the actions subject to suit resulted directly from government specifications or direction." *Albrecht*, 2011 WL 5109532, at *5.

39.     As demonstrated by the Chambers Works Contracts, DuPont produced and utilized hazardous substances at Chambers Works as ordered by the U.S. government.

40.     Therefore, the "for or relating to" prong is satisfied because Plaintiff's claims arise at least in part from DuPont's production of certain chemicals manufactured at the government's behest and pursuant to military specifications.  Plaintiff's claims encompass the entire period of DuPont's operation of Chambers Works, and Plaintiff specifically lists the types of chemicals DuPont produced at Chambers Works at the government's behest and pursuant to military specifications as causing or contributing to her injuries.  *Id.* at ¶ 4.  For example, Plaintiff expressly alleges harm from "halogenated hydrocarbons," and two of DuPont's government contracts were for the production of halogenated hydrocarbons.  *Id.* at ¶ 4(b).

### D.     DuPont Has Colorable Federal Defenses to Plaintiff's Claims

41.     "At the removal stage," DuPont need only show that a federal defense is "legitimate and could reasonably be asserted, given the facts presented and the current law."  *Papp*, 842 F.3d at 815 (brackets omitted).  "A defendant 'need not win his case before he can have it removed.'"  *Id.* (quoting *Willingham*, 395 U.S. at 407); *see also Isaacson*, 517 F.3d at 139 ("To be 'colorable,' the defense need not be 'clearly sustainable,' as the purpose of the statute is to secure that the validity of the defense will be tried in federal court." (citation omitted)); *O'Connell v. Foster Wheeler Energy Corp.*, 544 F. Supp. 2d 51, 54 (D. Mass. 2008) (upon removal, defendant must raise "colorable federal defense").  At the removal stage, the inquiry "is purely jurisdictional, and neither the parties nor the district courts should be required to engage in fact-intensive motion practice, pre-discovery, to determine the threshold jurisdictional issue." *Cuomo v. Crane Co.*, 771 F.3d 113, 116 (2d Cir. 2014).  Moreover, "this inquiry is undertaken whilst viewing the facts in the light most favorable to Defendants."  *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770,

783–84 (E.D. Pa. 2010). "Precisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should 'have the opportunity to present [his] version of the facts to a federal, not a state, court.'" *Cuomo*, 771 F.3d at 116 (alteration in original) (citation omitted). The Court's role here is "not to resolve whether the defendant has established the [] defense or to resolve factual disputes, but only to ensure the existence of some competent evidence supporting a 'colorable' federal defense." *N.J. Dep't of Envtl. Prot.*, 2020 WL 2611539, at *5 (citing *Cuomo,* 771 F.3d at 117).

42.     DuPont is immune from Plaintiff's state law tort claims[3] based on the government contractor defense, as articulated in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), which stated that the "uniquely federal interest" of "getting the Government's work done" requires that under certain circumstances, a private contractor must be protected from tort liability associated with its performance of a government procurement contract. *Id.* at 504–05. The *Boyle* Court held that federal interests preempt state law duties and immunize defendants when "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Id.* at 512.

43.     DuPont is likewise immune under the related principle of derivative sovereign immunity articulated in *Yearsley v. W. A. Ross Construction Co.*, 309 U.S. 18 (1940). Under *Yearsley*, a contractor that acts in conformity with government specifications pursuant to a duly-

---

[3] Plaintiff's Amended Complaint alleges the following state tort claims against DuPont: Negligence, Gross Negligence and Recklessness, Private Nuisance, Public Nuisance, and Past and Continuing Trespass. *See* Exhibit A.

authorized contract is shielded from liability for claims resulting from its performance of the allegedly defective specifications. *See Beaver Valley Power Co. v. Nat'l Eng'g & Contracting Co.*, 883 F.2d 1210, 1215 n.4 (3d Cir. 1989) ("The notion of shielding contractors from liability for defective government specifications . . . dates at least as far back as *Yearsley*…, which held that a contractor building dikes pursuant to a government contract was not liable for erosion if the contractor's performance adhered to the government's specifications." (internal citation omitted)); *New Jersey Dep't of Envtl. Prot.*, 2020 WL 2041382, at *4 (holding that DuPont raised colorable federal defense under *Yearsley* based upon Notice of Removal alleging that it produced chemicals that Plaintiff alleged were released or discharged from site pursuant to valid contracts with the federal government in connection with war efforts).

44.    Given Plaintiff's allegations, namely, that DuPont is liable in tort due to its production, utilization and discharge of hazardous materials over a 125-year period at Chambers Works, and considering the Chambers Works Contracts requiring DuPont to produce at least some of the hazardous materials identified in the Complaint during that time period, under precise government specifications, using plants and equipment built for the government, it is reasonable for DuPont to assert the government contractor defense articulated in *Boyle* and the related derivative sovereign immunity defense set forth in *Yearsley*. *See New Jersey Dep't Envtl. Prot. v. Exxon Mobil Corp.*, 381 F. Supp. 2d 398, 404 (2008) (finding that Defendant's government contractor defense was colorable where certain of its production activities during World War II were under the control of the federal government).

III.    **REMOVAL ON THE BASIS OF DIVERSITY IS PROPER BECAUSE DEFENDANT CLEMENTE WAS FRAUDULENTLY JOINED**

45.    Additionally, or alternatively, under 28 U.S.C. § 1441 defendants may remove a case filed in a state court to federal court when the district court embracing that state court has original jurisdiction.  Under 28 U.S.C. § 1332, district courts shall have original jurisdiction where the matter in controversy: 1) exceeds the sum or value of $75,000; and 2) is between citizens of different states.

46.    As set forth below, both requirements are satisfied here.  Accordingly, under the doctrine of fraudulent joinder, this case is also removable on the basis of diversity under 28 U.S.C. § 1332 and § 1441.

    A.    **The Amount in Controversy Exceeds $75,000**

47.    Based on the allegations on the face of the Complaint, the amount in controversy, exclusive of interest and costs, exceeds $75,000, as required by 28 U.S.C. § 1332(a) and 28 U.S.C. § 1441(b).

48.    A defendant's notice of removal "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  *Dart Cherokee Basin Operating Co., LLC v. Owens,* 574 U.S. 81, 89 (2014) (citing 28 U.S.C. § 1446(a)).

49.    A defendant can establish the amount in controversy based on the allegations of the Complaint.  *Penn v. Wal-Mart Stores, Inc.*, 116 F. Supp. 2d 557, 562 (D.N.J. 2000); *Buchanan v. Lott*, 255 F. Supp. 2d 326, 331 (D.N.J. 2003).  "[W]here Plaintiff's complaint does not specify an amount of damages, the Court must independently appraise the plaintiff's claims as set forth in the complaint, and determine the amount in controversy 'by a reasonable reading of the value of the

16

rights being litigated.'"  *Penn*, 116 F. Supp. at 561 (quoting *Angus v. Shiley, Inc.*, 989 F.2d 142, 146 (3d Cir. 1993)).

50.   In the Amended Complaint, Plaintiff requests compensatory damages, punitive damages, and non-compensatory damages.  Exhibit A at ¶¶ 108-199.  The Amended Complaint lists *eight* total counts: 1) negligence; 2) gross negligence and recklessness; 3) private nuisance; 4) public nuisance; 5) past and continuing trespass; 6) strict liability for abnormally dangerous activities; 7) strict liability for failure to warn; and 8) strict liability for defective design.  *Id*. Plaintiffs have sued *nine* defendants with the potential to add more.  *Id.*  Plaintiff seeks to recover damages for at least *six* personal injuries including: ovarian cancer; removal of ovaries; removal of fallopian tubes; chemotherapy; profound pain and suffering and mental anguish; and loss of the ability to enjoy life's pleasures.  *Id*. at ¶ 2.  Allegations similar to these have been held to establish, on their face, that the amount in controversy exceeds the jurisdictional requirement.  *See, e.g.*, *Fields v. Zubkov*, 2008 WL 4447098, at *4 (D.N.J. 2008) ("[M]ost removed personal injury cases will likely remain in federal court even if they involve a very minor injury—unless the plaintiff limits her damages below the jurisdictional limit."); *Duaan v. Acme Markets. Inc.*, 2016 WL 266350, at *3 (D.N.J. 2016) (denying plaintiffs' motion to remand because general allegations of "severe and painful bodily injuries" were enough to establish the amount in controversy); *Raspa v. Home Depot*, 533 F. Supp. 2d 514, 522 (D.N.J. 2007) (holding that claims for punitive damages met the amount in controversy requirement, which can be aggregated with compensatory damages to arrive at the amount in controversy); *Avant v. J.C. Penney*, 2007 WL 1791621, at *2 (D.N.J. 2007) ("[T]his Court generally will not remand a personal injury claim in the absence of a waiver by Plaintiff capping the damages at $75,000.").

51.     Based on the allegations in the Amended Complaint (*see* Exhibit A at ¶¶ 108-199), therefore, the amount in controversy, exclusive of interests and costs, exceeds $75,000, as required by 28 U.S.C. § 1332(a) and 28 U.S.C. § 1441(b).

**B.      Excluding Fraudulently-Joined Defendant Clemente, There Is Complete Diversity Between the Parties**

52.     This is a civil action that falls under the Court's original jurisdiction pursuant to 28 U.S.C. § 1332 (diversity of citizenship) and may be removed to this Court under 28 U.S.C. §§ 1441 and 1446.

53.     In order for complete diversity to exist, "no plaintiff [may] be a citizen of the same state as any defendant." *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (citing *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010)).

54.     For purposes of diversity of citizenship, a corporation is deemed to be a citizen of both the state of its incorporation and the state where it has its principal place of business. *See* 28 U.S.C. § 1332(c)(1).   The citizenship of an LLC, on the other hand, "is determined by the citizenship of its members." *Lincoln*, 800 F.3d at 105 (citing *Zambelli,* 592 F.3d at 420).   Thus, in order for complete diversity to exist "all of the LLC's members must be diverse from all parties on the opposing side." *Lincoln*, 800 F.3d at 105 (citing *Swiger v. Allegheny Energy, Inc.*, 540 F.3d 179, 185 (3d Cir.2008)).   Citizenship of defendants sued under fictitious names "shall be disregarded" for the purposes of removing on the basis of diversity.  U.S.C. § 1441(b)(1).

55.     Here, Plaintiff is a citizen of New Jersey, and the only Defendant alleged to be a citizen of New Jersey has been fraudulently joined.

56.     The Amended Complaint alleges that Plaintiff is a resident of New Jersey. Exhibit A at ¶ 12.

57.     The Amended Complaint alleges that Solvay Specialty Polymers, USA, LLC is a corporation organized under the laws of the State of Delaware with its principal place of business located in Houston, Texas.  Exhibit A at ¶ 15.  Ausimont Industries, Inc., a citizen of Delaware and Texas, is the sole member of Solvay Specialty Polymers, USA, LLC.

58.     The Amended Complaint alleges that Solvay Solexis, Inc. is the predecessor of Solvay USA and was a corporation duly organized under the laws of the State of Delaware with its principal place of business located in Houston, Texas.  *Id.* at ¶ 16.

59.     The Amended Complaint alleges that Arkema, Inc. is a Pennsylvania corporation with its principal place of business located in Philadelphia, Pennsylvania.  *Id.* at ¶ 18.

60.     At the time Plaintiff commenced this action and at all times since, DuPont is a corporation duly organized under the laws of the State of Delaware with its principal place of business located at 974 Centre Road, Wilmington, Delaware 19899.  *Id.* at ¶ 19.

61.     The Amended Complaint alleges that The Chemours Company is a corporation duly organized under the laws of the State of Delaware with its principal place of business located at 1007 Market Street, Wilmington, Delaware 19899.  *Id.* at ¶ 20.

62.     The Amended Complaint alleges that The Chemours Company FC, LLC is a corporation duly organized under the laws of the State of Delaware with its principal place of business located at 1007 Market Street, Wilmington, Delaware 19899.  *Id.* at ¶ 21.  The Chemours Company, a Delaware Corporation, is the sole member of The Chemours Company FC, LLC.

19

63.    The Amended Complaint alleges that The 3M Company is a corporation duly organized under the laws of the State of Minnesota with its principal place of business in Maplewood, Minnesota.  *Id.* at ¶ 23.

64.    DuPont need not consider the citizenship of the fictitious John Doe Entities #1-20.

65.    Plaintiff's Complaints name Clemente as defendants,[4] apparently for the sole purpose of defeating diversity jurisdiction.

66.    The Amended Complaint alleges that Anthony Clemente, Inc. (a/k/a "A. Clemente, Inc.") is a corporation organized under the laws of New Jersey with its principal place of business located in New Jersey.  Exhibit A at ¶ 13.

67.    As discussed below, Plaintiff's allegations and circumstances surrounding Defendant Clemente's inclusion in this case support that Plaintiff lacks colorable claims, or the intent to pursue such claims, against Clemente, and that Clemente was named solely to defeat diversity jurisdiction.  Defendant Clemente's citizenship should therefore be disregarded for purposes of the jurisdictional analysis, pursuant to the doctrine of fraudulent joinder.

68.    Once Defendant Clemente's citizenship is disregarded, complete diversity exists among the parties, and removal is proper under 28 U.S.C. § 1332(a)(1).

---

[4] Records exist for "A. Clemente, Inc." but not for "Anthony Clemente, Inc."  No records suggest that "Anthony Clemente, Inc." was an entity separate from "A. Clemente, Inc."

20

69.     Accordingly, the present lawsuit may be removed from the Superior Court of New Jersey, Law Division, Salem County, and brought before the United States District Court for the District of New Jersey pursuant to 28 U.S.C. §§ 1332(a) and 1441(b).

### C.      Defendant Clemente has been Fraudulently Joined.

70.     It is well-settled that a non-resident defendant's right to remove a case on diversity grounds "cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy." *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921) (internal citations omitted).  In such a case, the non-resident defendant may show by petition for removal that the joinder is "only a sham or fraudulent device to prevent a removal." *Id.* (internal citations omitted).

71.     The Third Circuit has recognized this right on many occasions.  "Joinder is fraudulent if 'there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, *or* no real intention in good faith to prosecute the action against the defendant or seek a joint judgment.'" *In re Briscoe*, 448 F.3d 201, 216 (3d Cir. 2006) (quoting *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 32 (3d Cir. 1985)) (emphasis added); *see also Batoff v. State Farm Ins. Co.,* 977 F.2d 848 (3d Cir. 1992); *Boyer v. Snap-on Tools Corp.,* 913 F.2d 108 (3d Cir. 1990).

72.     If the claims against the non-diverse defendant are "wholly insubstantial and frivolous" then joinder is fraudulent. *Carneys Point Twp. v. E. I. du Pont de Nemours & Co.*, 2017 WL 3189886, at *3 (D.N.J. July 26, 2017) (quoting *Batoff*, 977 F.2d at 851).  To determine whether joinder is fraudulent, the court is to "assume as true all factual allegations of the complaint." *Carneys Point*, 2017 WL 3189886, at *3 (quoting *Batoff*, 977 F.2d at 851).

ME1 39352437v.1

73.     Clemente ceased to exist more than two decades before Plaintiff filed her initial Complaint.  Public records reflect the following:

- In August 1996, Clemente filed its last mandatory annual report with the New Jersey Department of the Treasury.  (*See* Exhibit C).

- In October 1998, Clemente filed for Chapter 7 Bankruptcy (liquidation).

- Clemente's bankruptcy case ended on May 25, 1999.  (*See* Exhibit D).

- In July 2004, the New Jersey Department of the Treasury revoked Clemente's corporate status.  (*See* Exhibit E).

74.     Plaintiff has filed no affidavit of service for service upon Clemente or any other defendant.  Clemente has not filed an appearance in the case captioned as *Albritton v. Clemente, Inc., et. al.*, Case No. SLM-L-000187-21.

75.     Clemente has not responded to the Complaint in the four months since it was filed.[5] Despite this, Plaintiff has not pursued her claims against Clemente to this point.

76.     Counsel for the Plaintiff in this action have filed multiple personal-injury complaints in this Court that are substantively similar to Plaintiff's Amended Complaint.  These federal-court actions were brought on behalf of individuals purportedly residing in the same

---

[5] Plaintiff served DuPont on December 27, 2021 but did not file an affidavit of service.  Counsel for Plaintiff served Clemente's former Treasurer, Beverly Booth, with the complaints in three other related state cases in September and October 2021 (*Allen v. Clemente, Inc., et. al.*, Case No. SLM-L-000198-21; *Mesogianes, et. al. v. Clemente, Inc., et. al.*, Case No. SLM-L-000199-21; and *Philipp, et. al. v. Clemente, Inc., et. al.,* Case No. SLM-L-000181-21).  Plaintiff may have likewise served Clemente in the current  case, and simply not filed a corresponding affidavit of service.

general geographic area as Plaintiff for alleged exposure to PFAS and the other categories of substances listed in Plaintiff's Amended Complaint, and also name DuPont, Solvay Specialty Polymers, USA, LLC; Solvay Solexis, Inc.; Arkema, Inc.; The Chemours Company; The Chemours Company FC, LLC; and The 3M Company as defendants. The primary substantive difference between Plaintiff's Amended Complaint and these prior and subsequently filed federal court cases is that the federal court complaints do not identify Clemente as a defendant or otherwise reference Clemente.[6]

77.    Given that Plaintiff was on notice at the filing of the initial Complaint that Clemente was a dissolved, liquidated corporation, that Plaintiff has not pursued her claims against Clemente despite Clemente's failure to respond to the Complaint, that any claims Plaintiff might have had against Clemente would be long-since barred by the operative statutes of limitations, and that Counsel for Plaintiff has not added Clemente to any of its similar federal cases, the only apparent explanation for Plaintiff's naming Clemente as a party is as a mechanism to oppose diversity jurisdiction. The circumstances are not compatible with a good-faith intent to prosecute claims

---

[6] These federal court cases are:
1)  *Kimberly Bond, et. al. v. Solvay Specialty Polymers, USA, LLC, et. al.* Civil Action No.: 1:20-cv-08487-NLH-KMW;
2) *Theresa Slusser, et. al. v. Solvay Specialty Polymers, USA, LLC, et. al.* Civil Action No.: 1:20-cv-11393-NLH-KMW;
3) *Tammy O'Leary, et. al. v. Solvay Specialty Polymers, USA, LLC, et. al.* Civil Action No.: 1:21-cv-00217-NLH-KMW;
4) *Carly Corrar, et. al. v. Solvay Specialty Polymers, USA, LLC, et. al.* Civil Action No.: 1:21-cv-00452-NLH-KMW;
5) *Shirley Bond v. Solvay Specialty Polymers, USA, LLC, et. al.* Civil Action No.: 1:21-cv-11203-NLH-KMW; and
6) *Nicole Bond v. Solvay Specialty Polymers USA, LLC*, et al., Civil Action No.: 1:21-cv-20755-NLH-AMD.

ME1 39352437v.1

against Clemente, and its inclusion in this case thus constitutes fraudulent or sham joinder pursuant to the doctrine identified in paragraph 71.

78.     Because inclusion of Clemente in this case constitutes fraudulent joinder, its New Jersey citizenship does not destroy complete diversity, and it need not consent to removal.

79.      In sum, this action also may be removed from the Superior Court of New Jersey, Law Division, Salem County to this Court by DuPont in accordance with the provisions of 28 U.S.C. §§ 1332(a), 28 U.S.C. § 1441(a) and the other federal statutes referenced herein because (i) this action is a civil action pending within the jurisdiction of the United States District Court for the District of New Jersey; (ii) this action is between citizens of different states; and (iii) the amount in controversy exceeds seventy-five thousand dollars ($75,000.00), exclusive of interest and costs.

## IV.     DUPONT HAS SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL.

80.     DuPont files this Notice of Removal "together with a copy of all process, pleadings, and orders served upon it" during the state-court proceedings as Exhibits A-B.  *See* 28 U.S.C. § 1446(a).

81.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 110 and 1441(a) because this Court is the United States District Court for the district and division embracing the Superior Court of New Jersey, Law Division, Salem County, where the state court complaint was filed.

82.     On December 27, 2021, Plaintiff served DuPont with a Summons and Amended Complaint.  DuPont had not previously been served with process.  Accordingly, this Notice of Removal is timely under 28 U.S.C. § 1446(b).

ME1 39352437v.1

83.     "[Removing Defendant] is not required to notify or obtain the consent of any other Defendant in this action in order to remove Plaintiff's action as a whole under § 1442(a)(1)."  *See, e.g.*, *Durham*, 445 F.3d at 1253; *Hilbert v. McDonnell Douglas Corp.,* 529 F. Supp. 2d 187, 195 (D. Mass. 2008); *Linden v. Chase Manhattan Corp.*, No. 99 Civ. 3970(LLS), 1999 WL 518836, at *1 (S.D.N.Y. July 21, 1999).  The consent of the other defendants is not required because removal does not proceed "solely under [28 U.S.C.] section 1441(a)."  28 U.S.C. § 1446(b)(2)(A).

84.     Pursuant to 28 U.S.C. § 1446(d), DuPont will promptly serve written notice of this Notice of Removal upon counsel for all parties and file a copy of this Notice of Removal with the Clerk of the Superior Court of New Jersey, Law Division, Salem County.

85.     By filing a Notice of Removal in this matter, DuPont does not waive the rights of any Defendant to object to service of process, the sufficiency of process, jurisdiction over the person, or venue; and DuPont specifically reserves the rights of all Defendants to assert any defenses and/or objections to which they may be entitled.

86.     DuPont reserves the right to amend or supplement this Notice of Removal.

87.     If there are any questions concerning this removal, DuPont respectfully requests the opportunity to present briefing and oral argument in support of removal.

*/s/ Lanny S. Kurzweil*
Lanny S. Kurzweil
Ryan Richman
McCarter & English, LLP
Four Gateway Center
100 Mulberry St.
Newark, NJ 07102
Telephone: (973) 639-2044
Facsimile: (973) 297-3810
lkurzweil@mccarter.com
rrichman@mccarter.com
*Attorneys for Defendants, E. I. du Pont de Nemours and Company, The Chemours Company, and The Chemours Company FC, LLC*

Dated:  January 26, 2022

26